UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| **BRANDON CALLIER,** | § |
| | § |
| **Plaintiff,** | § |
| | §  EP-23-cv-00296-KC |
| v. | § |
| | § |
| **FUND MY BIZ INC,** a Delaware Corporation and **ADAM SCHWARTZ** | § |
| | § |
| **Defendants.** | § |

### PLAINTIFF'S SECOND AMENDED COMPLAINT

COMES NOW Plaintiff Brandon Callier with his Second Amended Complaint and will show as follows:

### PARTIES

1. Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, a resident of the Western District of Texas, and was present in Texas for all automated text messages, in this case in El Paso County, Texas.

2. Defendant FUND MY BIZ INC. (FMB) is a corporation organized and existing under the laws of Delaware and can be served via registered agent Spiegel & Utrera, P.A., 9 East Loockerman Street, STE 202, Dover, Delaware 19901.

3. Defendant ADAM SCHWARTZ ("Schwartz") is a founder and chief operating officer of Defendant Fundmybiz.com Inc. and personally participated in the calls alleged herein. Schwartz's location is currently unknown and will be revealed during discovery.

1

**JURISDICTION AND VENUE**

4.  Jurisdiction.  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012).

5.  This Court has specific personal jurisdiction over Defendants because Defendants purposefully availed themselves to the State of Texas and to this District, and there is a sufficient relationship between Defendants' purposeful contacts with Texas and the litigation.  Defendants continued to purposefully send text messages into Texas even after Plaintiff alerted Defendant to the unwanted text messages.

   a. Defendants target Texas when marketing small business loans and regularly conduct business in this District, including telephone solicitation.

   b. Its agents sent texts to Plaintiff's El Paso area phone number with area code 915 to generate leads for Defendant FMB.

   c. Defendant FMB continued to purposefully send text messages into Texas after receiving a Do Not Call (DNC) request and being alerted that unwanted text messages were being sent into Texas.

   d. Defendant Schwartz directed the text messages to be sent into Texas and purposefully directed that Texas residents be targeted with the solicitation text messages.

   e. The purposeful texts to Texas injured Plaintiff in Texas, creating a causal link among Defendants, the forum, and the litigation exceeding the non-causal affiliation sufficient to support personal specific jurisdiction.  *See Ford Motor Co. v Mont. Eight Jud. Dist. Ct.*, 141 S. Ct. 1017 (2021).

6.      Venue.  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Western District of Texas when he received a substantial if not every single automated text message from Defendant FMB that is the subject matter of this lawsuit.

7.      This Court has venue over Defendant because the automated text messages at issue were sent by or on behalf of the above-named Defendant to Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

8.      In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

9.      The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system ('ATDS") or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

10.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States or is exempted by

rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

11.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

12.     Separately, the TCPA bans telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).[1]

13.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

14.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

15.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

16.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the

---

[1] *See* Code of Federal Regulations, Title 47, Parts 40 to 60, at 425 (2017) (codifying a June 26, 2003 FCC order).

agreement be executed as a condition of purchasing any good or service.

17.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

18.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

19.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

20.     A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

**FACTUAL ALLEGATIONS**

21.     Plaintiff personally successfully registered his phone number ending in 4604 on the

National Do Not Call Registry in December 2007.

22. At all times relevant hereto, Plaintiff was the subscriber of the personal telephone number ending in 4604.

23. Defendants routinely violate the TCPA as part of their business and knowingly and willfully commit TCPA violations.

24. Plaintiff filed Complaint EP-23-cv-00296-KC on August 14, 2023, against Enova International Inc.

25. On August 2, 2023, and again on September 13, 2023, Enova sent Mr. Adam Schwartz cease and desist letters instructing FMB to stop using Enova's name on the website [https://fundmybiz.com](https://fundmybiz.com).

26. Schwartz received the letter and removed the references to Enova from the website [https://fundmybiz.com](https://fundmybiz.com).

27. On October 5, 2023, Plaintiff was informed by Enova's counsel that Defendant FMB had used their name without their permission.

28. FMB is not a DBA of Enova. Enova has no association with FMB.

29. Plaintiff filed his First Amended Complaint based on the information obtained from Enova. Plaintiff named Steven Thaler, Fund My Biz, a New York Corporation, and Adam Schwartz as Defendants.

30. Plaintiff was contacted by former Defendant Steven Thaler ("Thaler") after Thaler was served with the Complaint.

31. On January 15, 2024, Thaler provided Plaintiff with an affidavit proclaiming that he had sold the website [https://fundmybiz.com](https://fundmybiz.com), had closed the business, and that his accountant had failed to file the dissolution paperwork.

32. The Fund My Biz, Inc. in Delaware is the only other Fund My Biz Inc. in existence.

33. Plaintiff did not have a prior existing business relationship with Defendants.

34. Plaintiff did not give consent to any of the text messages.

35. The text messages alleged herein were sent using an automated texting system.

36. Plaintiff received at least twenty-seven (27) automated text messages to his personal phone number ending in 4604 without his consent and not related to an emergency.

37. On February 24, 2023, Plaintiff received the first automated text message soliciting for business funding from phone number 718-957-2465.  The text message solicited Plaintiff for business funding and contained the link https://www.crmfinity.com/portal/prospects/customerView?ctoken=MjQzODlfNDNfQnJhbmRvbg==.

38. Plaintiff received six additional text messages from phone number 718-957-2465.  Each of the text messages contained the same link to the same application as in paragraph 27.

39. Each of the text messages from paragraph 28 was sent at time intervals that were 10 minutes after the hour:  11:10 AM, 1:10 AM, 9:10 AM, 9:10 AM, 9:10 AM, and 7:10 PM.

40. On March 30, 2023, at 10:01 AM Plaintiff received a text message from phone number 858-923-5144. This text message contained the hyperlink https://www.crmfinity.com/portal/prospects/customerView?ctoken=MjQzODlfNDNfQnJhbmRvbg== which directs Plaintiff to an application from Defendant FMB.

41. On March 30, 2023, at 10:04 AM Plaintiff received a text message from phone number 858-923-5144.  This text message was identical to the text message received by Plaintiff just three minutes earlier in paragraph 30.

42. On May 16, 2023, Plaintiff received a text message from phone number 929-297-8251

soliciting Plaintiff for business funding.  This text message contained the hyperlink https://www.crmfinity.com/portal/prospects/customerView?ctoken=MjQzODlfNDNfQnJhbmRv bg== which directs Plaintiff to an application from Defendant FMB.

43. Plaintiff received four additional text messages from phone number 929-297-8251.  These text messages were identical to the text message in paragraph 37.

44. Each of the text messages from paragraph 38 was sent in a time interval that was 16 minutes after the hour:  2:16 PM, 4:16 PM, 12:16 PM, and 12:16 PM.

45. On July 21, 2023, Plaintiff received a text message from phone number 929-348-2208.  This text message solicited Plaintiff for business funding and contained the hyperlink https://www.crmfinity.com/portal/prospects/customerView?ctoken=MjQzODlfNDNfQnJhbmRv bg== which directed Plaintiff to an application from Defendant FMB.

46. On July 31, 2023, Plaintiff received two text messages from phone number 347-830-7244.  These text messages solicited Plaintiff for business funding and contained the hyperlink https://www.crmfinity.com/portal/prospects/customerView?ctoken=MjQzODlfNDNfQnJhbmRv bg== which directed Plaintiff to an application from Defendant FMB.

47. On May 23, 2023, Plaintiff sent a trackable email to Defendant FMB informing Defendant of the unwanted text messages.  Defendant read the email and has continued to harass Plaintiff.

48. Each and every text message after May 23, 2023, email is a knowing and willful violation.

49. On November 16, 2023, Plaintiff began to receive additional automated solicitation text messages from Defendant.

50. Each of the text messages from November 16, 2023, forward was sent at a time interval

ending in 14 or 24:  9:24 AM, 10:14 AM, 11:24 AM, 1:24 PM. 2:14 PM. 8:14 AM, 8:14 AM, and 9:24 AM.

51. Table A shows the text messages sent to Plaintiff by Defendants.

TABLE A:

| Number: | Date: | Time: | Caller ID: | Note: |
|---|---|---|---|---|
| 1. | 02/24/2023 | 9:07 AM | 718-957-2465 | Automated Text Message |
| 2. | 02/24/2023 | 11:10 AM | 718-957-2465 | Automated Text Message |
| 3. | 02/24/2023 | 1:10 PM | 718-957-2465 | Automated Text Message |
| 4. | 03/04/2023 | 9:10 AM | 718-957-2465 | Automated Text Message |
| 5. | 03/24/2023 | 9:10 AM | 718-957-2465 | Automated Text Message |
| 6. | 03/30/2023 | 10:01 AM | 858-923-5144 | Automated Text Message |
| 7. | 03/30/2023 | 10:04 AM | 858-923-5144 | Automated Text Message |
| 8. | 05/16/2023 | 12:11 PM | 929-297-8251 | Automated Text Message |
| 9. | 05/16/2023 | 2:16 PM | 929-297-8251 | Automated Text Message |
| 10. | 05/16/2023 | 4:16 PM | 929-297-8251 | Automated Text Message |
| 11. | 05/24/2023 | 9:10 AM | 718-957-2465 | Automated Text Message |
| 12. | 05/24/2023 | 12:16 PM | 929-297-8251 | Automated Text Message |
| 13. | 05/25/2023 | 7:10 PM | 718-957-2465 | Automated Text Message |
| 14. | 06/16/2023 | 12:16 PM | 929-297-8251 | Automated Text Message |
| 15. | 07/21/2023 | 10:52 AM | 929-348-2208 | Automated Text Message |
| 16. | 07/31/2023 | 6:29 PM | 347-830-7244 | Automated Text Message |
| 17. | 07/31/2023 | 6:29 PM | 347-830-7244 | Automated Text Message |
| 18. | 09/08/2023 | 8:55 AM | 929-348-2208 | Automated Text Message |

| 19. | 09/08/2023 | 8:55 AM | 929-348-2208 | Automated Text Message |
| 20. | 11/16//2023 | 9:24 AM | 347-830-7717 | Automated Text Message |
| 21. | 11/16/2023 | 10:14 AM | 347-830-7717 | Automated Text Message |
| 22. | 11/16/2023 | 11:24 AM | 347-830-7717 | Automated Text Message |
| 23. | 11/16/2023 | 1:24 PM | 347-830-7717 | Automated Text Message |
| 24. | 11/16/2023 | 2:14 PM | 347-830-7717 | Automated Text Message |
| 25. | 11/17/2023 | 8:14 AM | 347-830-7717 | Automated Text Message |
| 26. | 11/24/2023 | 8:14 AM | 347-830-7717 | Automated Text Message |
| 27. | 11/24/2023 | 9:24 AM | 347-830-7717 | Automated Text Message |

52. Plaintiff did not have a preexisting relationship with Defendant FMB, had never been a customer of Defendant FMB, and had never applied for a loan or any other accounts with Defendant FMB.

53. Plaintiff's phone number had no reason to be in any database controlled by Defendant as Defendant FMB had no previous relationship with Plaintiff.

54. Plaintiff infers an ATDS was used because:

   a. Plaintiff was never a customer of Defendant FMB and Defendant FMB did not have a legitimate reason to have Plaintiff's phone number on any list, or database, from which Plaintiff's phone number would have been sent text messages.

   b. Random of sequential generation explains how Defendant FMB obtained and texted Plaintiff's number, considering Plaintiff did not give it to Defendant FMB, or have a relationship with Defendant FMB, or otherwise consent to the text messages.

    c. Had Defendant FMB obtained Plaintiff's number from a pre-existing list, rather than through random or sequential generation, the list likely would have been scrubbed against the National Do Not Call Registry and Plaintiff's number would have been removed.

    d. Had Defendant FMB obtained Plaintiff's number from a pre-existing list, rather than through random or sequential generation, the list likely would have been scrubbed against the Defendant FMB's internal Do Not Call list and Plaintiff's number would have been removed.

    e. Defendant FMB's text messages to Plaintiff came at specific time intervals that indicate they were sent in by automated means.

        i. The text messages from 718-957-2465 came from times 10 minutes after the hour.

        ii. The text messages from 929-297-8251 came from times 16 minutes after the hour.

        iii. The text messages from 929-348-2208 came from times ending in 14 minutes or 24 minutes after the hour.

    f. The text messages came from four different area codes.

    g. Defendant twice sent the same exact text messages to Plaintiff within minutes from two different phone numbers and area codes.

55. Defendant FMB placed multiple text messages to Plaintiff within a twelve-month period to Plaintiff's residential phone line, listed on the National DNC registry since 2007, which violated § 227(c) and 47 C.F.R. § 64.1200(c).

56. Defendant FMB knew or should have known that its conduct would violate the TCPA and

its regulations because Plaintiff has been on the National Do Not Call Registry since December 2007.  Plaintiff's Cell Phone is a Residential Phone

57. No emergency necessitated none of the alleged illegal automated text messages.

58. Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing text messages consumed part of this capacity.

## DEFENDANT SCHWARTZ IS PERSONALLY LIABLE

59. Defendant Schwartz personally participated in the texts at issue because Defendant Schwartz personally directed the text messages to be sent to Texas residents with Texas area codes.

60. Defendant Schwartz is the principal officer of Defendant FMB.

61. Defendant Schwartz closely holds Defendant FMB and is intimately involved in all decision-making and legal activities of Defendant FMB.

62. Defendant Schwartz controlled the website https://fundmybiz.com and directed that a deceptive trade practice be committed and that the name Enova International be used in order to lend legitimacy to Fund My Biz.

63. Defendant Schwartz directed that the text be made using automated dialing systems.

64. Defendant Schwartz purchased the automated dialing system and directed that it be used to send automated text messages.

65. Defendant Schwartz has direct and personal involvement in and ultimate control over every aspect of Defendant FMB's wrongful conduct that violated the TCPA, and/or directly controlled and authorized this conduct.

66. Defendant Schwartz at all times relevant to this Complaint acting alone or in concert with others, formulated, directed, controlled, had the authority to control, or participated in the acts

and practices set forth in this Complaint,

67.     There is precedent in the Western District for holding corporate officers personally liable when they participate in the alleged actions:

> "If the officer directly participated in or authorized the statutory violation, even though acting on behalf of the corporation, he may be personally liable. See *United States v Pollution Serv. Of Oswego, Inc*., 763 F.2d 133, 134-135 (2nd Cir.1985)
>
> The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General Motos Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992).  The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp*., 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp*., 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc*., 164 F. Supp. 2d 892 (W.D. Tex. 2001)
>
> Quoting Texas v. American Blastfax:
>
> The Court finds the above principles applicable to the TCPA that is, an officer may be personally liable under the TCPA if he had direct, personal participation in or personally authorized the conduct found to have violated the statute, and was not merely tangentially involved.  Individuals who directly (and here, knowingly and willfully) violate the TCPA should not escape liability solely because they are corporate officers.  As the State persuasive argues, to hold otherwise would allow the individual defendants to simply dissolve Blastfax, set-up a new shell corporation, and repeat their conduct.  Congress surely did not intend to permit such a result in passing the TCPA.
>
> To be clear, the Court finds Greg and Michael Horne were the "guiding spirits" an the "central figures" behind the TCPA violations.  They were the two persons who controlled all of Blastfax's day-to-day operations.  They both had direct, personal involvement in and ultimate control over every aspect of Blastfax's wrongful conduct that violate the TCPA, and/or directly controlled and authorized this conduct.  And they did so with their eyes and pocketbooks wide open.  After October 5, 2000, Greg and Michael Horne had good reason to believe they were running a business that violated the TCPA.  On February 9, 2001, they knew they were.  Yet they continued to direct their company to send unsolicited intrastate fax advertisements.  This is far more than a simple derivative liability case.  Accordingly, the Court *899 holds defendants Greg and Michael Horne are

jointly and severally liable with Defendant Blastfax, Inc., for all TCPA damages in this lawsuit." Texas v. American Blastfax, Inc., 164 F. Supp. 2d 892 (W.D. Tex. 2001).

68. The Same Court held that corporate officers were also personally liable for DTPA violations;

> The State contends Greg and Michael Horne are personally liable for any DTPA damages because they were solely responsible for the violating conduct…..For the same reasons discussed in finding the individual defendants personally liable under the TCPA, the Court agrees. See, e.g., *Barclay v. Johnson*, 686 S.W.2d 334, 336-37 (Tex. Civ. App.-Houston [1ST Dist.] 1985, no writ) (finding personal liability for corporate officer in DTPA misrepresentation claim, based on general rule that "a corporate agent knowingly participating in a tortious of fraudulent act may be held individually liable, even though he performed the act as an agent for the corporation……Accordingly, the Court finds defendants American Blastfax, Inc., Greg Horne and Michael Horne are jointly and severally liable for $6,000 in damages for their violations of the DTPA." *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001).

69. Defendant Schwartz is the managers and owners of Defendant FMB and control the day-to-day operations of FMB and directed their employees, agents, salespersons, and solicitors to make TCPA-violating phone calls.

70. Defendant Schwartz is not merely a bystander. He is the masterminds that schemed, planned, directed, initiated, and controlled illegal and fraudulent behavior.

71. Defendant Schwartz is well aware his conduct violated the TCPA and refused to alter their behavior. Defendant Schwartz is the sole director and officer of Defendant FMB and the only person with the power to make unlawful, fraudulent, and unethical behavior stop.

**INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES AS A RESULT OF THE TEXT MESSAGES**

72. Defendants' text messages harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy."

73. Defendants' text messages harmed Plaintiff by trespassing upon and interfering with

Plaintiff's rights and interests in Plaintiff's cellular telephone.

74. Defendants' text messages harmed Plaintiff by intruding upon Plaintiff's seclusion.

75. Plaintiff has been harmed, injured, and damaged by the text messages including, but not limited to: reduced device storage, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of his cell phone.

### PLAINTIFF'S CELL PHONE IS A RESIDENTIAL NUMBER

76. The calls to Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 16 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays for the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### COUNT ONE:
### Violations of the TCPA, 47 U.S.C. § 227(b)(1)(A)(iii), by Automated Telemarketing Without Prior Express Written Consent
### (Against All Defendants)

77. Plaintiff incorporates the preceding paragraphs 1-84 as if fully set forth herein.

78. Defendant FMB, and/or their agents placed twenty-one (21) automated text messages to Plaintiff's cellular telephone.

79. Plaintiff never consented to receive automated text messages from Defendants. Plaintiff had no relationship with Defendants.

80. Defendant FMB's automated text messages were made for the purposes of advertising and marketing their goods and services. These automated text messages constituted commercial advertising and telemarketing as contemplated by the TCPA.

81. The automated text messages were made using an ATDS to the cellular phone of Plaintiff in violation of 47 U.S.C. § 227(b)(1)(A)(iii) and (B).

82. As a result of their unlawful conduct, Defendants repeatedly invaded the personal privacy of Plaintiffs, causing Plaintiff to suffer damages and, under 47 U.S.C. § 227(b)(3)(B), entitling Plaintiff to recover $500 in statutory damages for each violation and an injunction requiring Defendants to stop their unlawful text message campaigns.

83. Not only did Defendants make these violating automated text messages, but Defendants and/or their agents also did so "knowingly" and/or "willfully' under 47 U.S.C. § 227 (b)(3)(C).

84. If the Court finds that Defendants willfully or knowingly violated this subsection, the Court may exercise its discretion to increase the amount of the award from $500 to $1500 per violation under 47 U.S.C. § 227(b)(3)(C).

## COUNT TWO:

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. § 64.1200(C))**

**(Against All Defendants)**

85. Plaintiff incorporates the preceding paragraphs 1-84 as if fully set forth herein.

86. The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute a violation of FCC regulations by making multiple telemarketing solicitations to a consumer on the National Do-Not-Call Registry within a 12-month period in violation of 47 C.F.R. § 64.1200(c)(2).

87. Defendants sent twenty-one (21) text messages to Plaintiff's private residential telephone

number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the text messages, in violation of 47 U.S.C § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

88.     Plaintiff was statutorily damaged at least twenty-one (21) times under 47 U.S.C. § 227(c)(3)(F) by Defendants by the automated text messages described above, in the amount of $500 per automated text message.

89.     Plaintiff is entitled to an award of at least $500 in damages for each such violation, 47 U.S.C. § 227(c)(5)(B).

90.     Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

   A.     Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

   B.     A declaration that actions complained of herein by Defendants violated the TCPA and Texas state law;

   C.     An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

   D.     An award of $500 per automated text message in statutory damages arising from the TCPA §227(b) violations jointly and severally against the corporations and individuals for ten (10) automated text messages.

  E. An award of $1500 per automated text message in statutory damages arising from the TCPA §227(b) intentional knowing and willful violations jointly and severally against the corporations and individuals for seventeen (17) automated text messages.

  F. An award of $500 per automated text message in statutory damages arising from the TCPA §227(c) violations jointly and severally against the corporations and individuals for ten (10) automated text messages

  G. An award of $1500 per automated text message in statutory damages arising from the TCPA §227(c) intentional knowing and willful violations jointly and severally against the corporations and individuals for seventeen (17) automated text messages.

  H. An award to Mr. Callier of damages, as allowed by law under the TCPA;

  I. An award to Mr. Callier of interest, costs, and attorneys' fees, as allowed by law and equity.

  J. Such further relief as the Court deems necessary, just, and proper.

January 25, 2024,                Respectfully submitted,

                         /s/ Brandon Callier

                         _____

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail Drive
El Paso, TX 79912
915-383-4604
Callier74@gmail.com

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trail by jury on all claims so triable.

| | |
|---|---|
| January 25, 2024, | Respectfully submitted,<br><br>/s/ Brandon Callier<br>_____<br>Brandon Callier<br>Plaintiff, Pro Se<br>6336 Franklin Trail Drive<br>El Paso, TX 79912<br>915-383-4604<br>Callier74@gmail.com |